UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAY SMART,<br><br>        Plaintiff,<br><br>    v.<br><br>US LBM, LLC, et al.,<br><br>        Defendants. | Case No. 24-cv-04416-KAW<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS**<br><br>Re: Dkt. Nos. 26, 27 |

On July 22, 2024, Plaintiff Shay Smart filed the instant action against Defendants US LBM, LLC ("US LBM") and Pilot IT, LLC ("Pilot"), alleging that he was terminated after complaining about being wrongfully misclassified as an independent contractor. (Compl., Dkt. No. 1.) On October 14, 2024, Plaintiff filed his amended complaint. (First Amend. Compl. ("FAC"), Dkt. No. 21-1.) Pending before the Court are Defendants' motions to dismiss. (US LBM Mot. to Dismiss, Dkt. No. 26; Pilot Mot. to Dismiss, Dkt. No. 27.)

Having considered the parties' filings, the relevant legal authorities, and the arguments made at the December 19, 2024 hearing, the Court GRANTS IN PART and DENIES IN PART Defendants' motions to dismiss.

## I. BACKGROUND

Pilot is a staffing company which provides independent contractors to US LBM. (FAC ¶ 6.) On June 7, 2023, Pilot's Managing Director, Jeff Krischano, contacted Plaintiff regarding a Senior IT Project Manager position at US LBM. (FAC ¶ 17.) Mr. Krischano represented that he had been tasked with finding an independent contractor to assist US LBM in implementing new software, and that the position would last at least a year. (FAC ¶ 18.) Mr. Krischano asked Plaintiff to interview with US LBM. (FAC ¶ 18.)

1   On June 13, 2023, Plaintiff interviewed with US LBM's Director of Accounts Payable,
2  Stephanie Larsen.  (FAC ¶ 19.)  After the interview, Mr. Krischano told Plaintiff that Ms. Larsen
3  thought he was a good fit.  (FAC ¶ 19.)  That day, US LBM, through Pilot, initiated the process of
4  hiring Plaintiff as an independent contractor Senior Project IT Manager.  (FAC ¶ 19.)
5   On June 14, 2023, Mr. Krischano again told Plaintiff the position would last at least a year.
6  (FAC ¶ 20.)  Pilot also stated that US LBM would classify Plaintiff as an independent contractor.
7  (FAC ¶ 20.)  On June 15, 2023, Elisha Barden[1] provided Plaintiff with a W9 form, timesheets, and
8  an independent contractor agreement, and informed Plaintiff that he would start work on June 26,
9  2023.  (FAC ¶ 20.)  The independent contractor agreement stated that Plaintiff was supposed to
10 work forty hours per week.  (FAC ¶ 20.)  On June 20, 2023, Plaintiff received a computer that US
11 LBM required him to use.  (FAC ¶ 20.)
12  On June 30, 2023, Mr. Krischano informed Plaintiff that he would schedule recurring
13 check in meetings with Plaintiff and other "placements" at US LBM regarding their work.  (FAC ¶
14 21.)  Plaintiff told Mr. Krischano that his job duties felt like that of a W2 employee, not an
15 independent contractor.  (FAC ¶ 21.)
16  During his employment, Plaintiff worked remotely from his home, using his home phone,
17 home internet, and home energy to conduct his work.  (FAC ¶¶ 4, 113.)  Plaintiff expected to be
18 working independently in his job duties, and to attend company meetings only occasionally.
19 (FAC ¶ 22.)  In practice, Plaintiff had a set schedule, during which he was expected to be available
20 for performing tasks for US LBM.  (FAC ¶ 23.)  US LBM also provided Plaintiff a company e-
21 mail address and necessary supplies and required him to attend internal trainings.  (FAC ¶ 24.)  US
22 LBM required Plaintiff to attend several meetings a day, with Plaintiff sometimes attending
23 meetings for six to eight consecutive hours.  (FAC ¶ 24.)  Additionally, Plaintiff performed many
24 of the regular job duties of US LBM's full-time employees.  (FAC ¶ 23.)  For example, US LBM
25 informed Plaintiff that he would be assuming the work of a full-time regular employee, Lou
26 Chebetar, while he was on paternity leave.  (FAC ¶ 27.)  Plaintiff was then required to meet with
27
28  _____
   [1] The Complaint does not specify which Defendant Ms. Barden worked for.

Mr. Chebetar daily to discuss ongoing projects. (FAC ¶ 27.)

Plaintiff alleges that he worked nine to eleven hours per day nearly every day of the week, and that his work exceeded forty hours per week during his entire employment. (FAC ¶ 26.) Pilot/Mr. Krischano's agreement, however, indicated he should only log forty hours per week in the timesheets provided by Pilot. (FAC ¶ 26.) Pilot then paid Plaintiff on a biweekly basis based on timesheets he submitted to Pilot. (FAC ¶¶ 22, 26.)

On July 7, 2023, Mr. Krischano e-mailed Plaintiff, asking how his work was going and setting a meeting for Pilot contractors. (FAC ¶ 25.) On July 14, 2023, Plaintiff told Ms. Larsen he believed he was misclassified as an independent contractor. (FAC ¶ 28.) Plaintiff raised the same concerns to Mr. Chebetar, but Mr. Chebetar made it clear that Plaintiff was to follow the orders of Senior Vice President of Finance Andrew Linley and cover for him during his paternity leave. (FAC ¶ 30.) On July 17, 2023, Mr. Krischano postponed a project planning meeting with Plaintiff. (FAC ¶ 29.) On July 19, 2023, Mr. Krischano checked in with Plaintiff and informed him that he was scheduling a meeting to discuss his progress in August. (FAC ¶ 31.)

On July 24, 2023, Ms. Larsen told Plaintiff that Mr. Linley had ordered her to terminate his contract immediately but did not provide a reason for the termination. (FAC ¶ 32.) Plaintiff believes he was terminated because he had voiced his concerns that he was misclassified as an independent contractor. (FAC ¶ 34.) That evening, Plaintiff saw Pilot had posted a position that had the same title, scope, and duties as Plaintiff's. (FAC ¶ 32.) Mr. Krischano confirmed that the posting was for Plaintiff's same role. (FAC ¶ 32.)

Over the next few days, Plaintiff worked with Mr. Krischano, Ms. Larsen, Mr. Chebetar, and two other individuals to hand off his projects. (FAC ¶ 33.) On July 28, 2023, Plaintiff's e-mail and software accounts were closed, and he could no longer login. (FAC ¶ 33.) Plaintiff received his final paycheck from Pilot on August 2, 2023. (FAC ¶ 35.)

On November 13, 2023, Plaintiff's counsel e-mailed Mr. Krischano and US LBM for Plaintiff's personnel file. (FAC ¶ 71.) On November 27, 2023, US LBM informed Plaintiff's counsel that it did not have any records, while Mr. Krischano never responded. (FAC ¶ 72.)

On July 22, 2024, Plaintiff filed the instant case. After Pilot filed a motion to dismiss,

3

1  Plaintiff filed the operative complaint in lieu of an opposition. Plaintiff brings claims for: (1)
2  willful misclassification as an independent contractor, (2) whistleblower retaliation, (3) wrongful
3  termination in violation of public policy, (4) failure to permit inspection of employee records, (5)
4  failure to provide accurate and itemized wage statements, (6) waiting time penalties, (7) violation
5  of the Unfair Competition Law ("UCL"), (8) failure to pay overtime wages, and (9) failure to
6  reimburse required business expenditures.

On November 5, 2024, US LBM filed a motion to dismiss. On November 19, 2024, Plaintiff filed his opposition. (Pl.'s Opp'n re US LBM Mot. to Dismiss, Dkt. No. 28.) On November 26, 2024, US LBM filed its reply. ("US LBM Reply, Dkt. No. 29.)

On November 12, 2024, Pilot filed its motion to dismiss. On November 26, 2024, Plaintiff filed his opposition. (Pl.'s Opp'n re Pilot Mot. to Dismiss, Dkt. No. 30.) On December 3, 2024, Pilot filed its reply. (Pilot Reply, Dkt. No. 31.)

## II.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a party may file a motion to dismiss based on the failure to state a claim upon which relief may be granted. A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

In considering such a motion, a court must "accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted), and may dismiss the case or a claim "only where there is no cognizable legal theory" or there is an absence of "sufficient factual matter to state a facially plausible claim to relief." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Navarro*, 250 F.3d at 732) (internal quotation marks omitted).

A claim is plausible on its face when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). In other words, the facts alleged must demonstrate "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action

4

will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"Threadbare recitals of the elements of a cause of action" and "conclusory statements" are inadequate. *Iqbal*, 556 U.S. at 678; *see also Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996) ("[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim."). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully . . . When a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (internal citations omitted).

Generally, if the court grants a motion to dismiss, it should grant leave to amend even if no request to amend is made "unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (citations omitted).

### III.   DISCUSSION

#### A.   First Claim: Willful Misclassification

Plaintiff's first claim is for willful misclassification under California Labor Code §§ 226.8 and 2775. Defendants seek dismissal of this claim on the ground that there is no private right of action for this claim, pointing to *Noe v. Superior Court*, 237 Cal. App. 4th 316 (2015). (US LBM Mot. to Dismiss at 5; Pilot Mot. to Dismiss at 10.)

Section 226.8(a) makes it unlawful for an employer to engage in "[w]illful misclassification of an individual as an independent contractor." Upon a finding by the Labor and Workforce Development Agency or a court that an employer violated § 226.8(a), that person shall be subjected to a civil penalty. In *Noe*, the Court of Appeal found that "Section 226.8 contains no language indicating that the Legislature intended to create a private right of action to enforce or collect the penalties set forth in the statute." 237 Cal. App. 4th at 337. Rather, "the statute includes specific language indicating that the provision is to be enforced by the 'Labor Commissioner.' This language precludes a direct private right of action." *Id.* at 339; *see also Colopy v. Uber Techs. Inc.*, No. 19-cv-06462-EMC, 2019 U.S. Dist. LEXIS 216020, at *17-18

(N.D. Cal. Dec. 16, 2019) ("[S]ection 226.8 does not provide a private right of action.").

In opposition, Plaintiff argues that *Noe* is limited to statutory penalties, and that it does not concern a private right of action to recover wages. (Pl.'s Opp'n re US LBM Mot. to Dismiss at 5; Pl.'s Opp'n re Pilot Mot. to Dismiss at 5.) Thus, Plaintiff contends that he may seek wages based on the alleged misclassification through Labor Code § 218, which provides that "[n]othing in this article shall limit the right of any wage claimant to sue directly or through an assignee for any wages or penalty due him under this article." (*Id.*) In support, Plaintiff points to *Raziano v. Albertsons LLC*, where the district court considered whether there was a private right of action to enforce IWC Wage Orders that identified wages whose payment was required by law. No. LA CV19-04373 JAK (ASx), 2020 U.S. Dist. LEXIS 130953, at *10-11 (C.D. Cal. Mar. 17, 2020). In finding that § 218 provided an implied right to obtain wages required by the IWC Wage Orders, the district court distinguished *Noe* as being limited to private rights of action to enforce penalties, rather than unpaid wages.[2] *Id.* at *12, 14.

Plaintiff, however, cites no authority that § 226.8 likewise requires the payment of wages. In *Villalpando v. Exel Direct Inc.*, the district court found that § 226.8 "does not give rise to a wage claim per se as the text of this provision does not give rise to any unpaid wages. Consequently, § 218 does not reveal a clear legislative intent to create a private right of action under § 226.8. Nor have Plaintiffs cited any other legislative history revealing such an intent as to this provision." No. 12-cv-04137 JCS, 2014 U.S. Dist. LEXIS 42622, at *66 (N.D. Cal. Mar. 28, 2014). Moreover, at the hearing, Plaintiff was not able to identify wages that were either not encompassed by another cause of action (*e.g.*, overtime, business expenses) or did not constitute general damages (*e.g.*, taxes).

Similarly, to the extent Plaintiff suggests he may seek unpaid wages through § 218 based on violations of Labor Code §§ 2775 or 2778, neither of these provisions require the payment of wages. Rather, these sections simply articulate the standard for determining whether an individual

---

[2] Contrary to Plaintiff's assertion at the hearing, the plaintiff in *Raziano* did **not** bring a § 226.8 misclassification claim; rather, the sole discussion of misclassification was in the district court's explanation for why *Noe* was distinguishable.

6

is an employee or an independent contractor. *See* Cal. Labor Code §§ 2775 (general standard), 2778 (standard for contracts for "professional services").

Accordingly, the Court dismisses Plaintiff's first claim with prejudice.

### B. Second and Third Claims: Whistleblower Retaliation and Wrongful Termination in Violation of Public Policy

Pilot seeks dismissal of Plaintiff's second and third claims on the ground that there are insufficient factual allegations that Pilot was responsible for Plaintiff's termination. (Pilot Mot. to Dismiss at 12-13.)

Here, Plaintiff argues that he made complaints directly to Mr. Krischano of Pilot, and that "a reasonable inference is that after that first complaint made directly to the owner of Pilot,[3] the Plaintiff's termination was a direct result of that complaint." (Pl.'s Opp'n re Pilot Mot. to Dismiss at 7.) The Court disagrees, as there are no allegations that suggest Mr. Krischano told US LBM about this complaint. Plaintiff's complaint also includes no specific facts attributing a role to Pilot or Mr. Krischano in Plaintiff's termination; rather, Plaintiff alleges that Ms. Larsen informed Plaintiff that Mr. Linley had ordered her to terminate his contract. (FAC ¶ 32.) Absent any specific facts that Pilot was involved in Plaintiff's termination, Plaintiff fails to allege unlawful termination claims against Pilot.

Accordingly, the Court dismisses Plaintiff's second and third claims against Pilot without prejudice.

### C. Fourth Claim: Failure to Permit Inspection of Employee Records

Labor Code § 226(b) requires an employer to allow current and former employees the right to inspect or receive a copy of records pertaining to their employment, while § 226(c) require an employer who receives a request to inspect or receive a copy of records to comply within 21 days of the request. Here, Plaintiff has alleged that he requested Plaintiff's personnel file, but that US

---

[3] While Plaintiff does not allege ownership in his complaint, Pilot acknowledges that Mr. Krischano is Pilot's owner in its motion to dismiss. (*See* Pilot Mot. to Dismiss at 13.) Likewise, while Plaintiff does not specify which company Mr. Linley worked for, Plaintiff acknowledges in his opposition that Mr. Linley was US LBM's Treasurer and SVP of Finance. (Pl.'s Opp'n re Pilot Mot. to Dismiss at 4.)

7

1    LBM responded that it had no records while Pilot did not respond at all.  (FAC ¶¶ 71-72.)

2         Both Defendants disclaim liability on the ground that Plaintiff was not their employee; in
3    short, US LBM asserts Plaintiff was Pilot's employee, while Pilot asserts Plaintiff was US LBM's
4    employee.  (US LBM Mot. to Dismiss at 8; Pilot Mot. to Dismiss at 14-15.)  As a general matter,
5    multiple entities may control different aspects of an employment relationship; for example, one
6    entity may hire and pay a worker, while another supervises their work.  *Martinez v. Combs*, 49
7    Cal. 4th 35, 76 (2010).  "The controlling case on joint employment in California is *Martinez v.*
8    *Combs*."  *Medina v. Equilon Enters.*, 68 Cal. App. 5th 868, 874 (2021).  Per *Martinez*, to employ
9    "means: (a) to exercise control over the wages, hours or working conditions, *or* (b) to suffer or
10   permit to work, *or* (c) to engage, thereby creating a common law employment relationship."  49
11   Cal. 4th at 64.  Under the "suffer or permit to work" standard, "the basis of liability is the
12   defendant's knowledge of and *failure to prevent* the work from occurring."  *Id.* at 70.

13        Ultimately, Plaintiff "is not required to conclusively establish that [D]efendants were [his]
14   joint employers at the pleading stage."  *Hibbs-Rines v. Seagate Techs., LLC*, No. C 08-05430 SI,
15   2009 U.S. Dist. LEXIS 19283, at *14 (N.D. Cal. Mar. 2, 2009).  The Court finds Plaintiff has
16   sufficiently alleged facts demonstrating employment by both Defendants at the pleading stage.
17   With respect to US LBM, Plaintiff has alleged that US LBM made the decision to hire him,
18   assigned Plaintiff a company e-mail address, provided him with necessary supplies including a
19   computer, required him to attend internal trainings and several meetings a day, assigned his work
20   including requiring that he take over the work of Mr. Chebetar, and ultimately terminated his
21   employment.  (FAC ¶¶ 19, 20, 24, 27, 32.)  In other words, US LBM owned the equipment used to
22   perform the job, had the authority to hire or discharge Plaintiff, had the authority to establish his
23   work schedule and assignments, and assigned him work that was a regular part of its business
24   operations.  *See Vernon v. California*, 116 Cal. App. 4th at 125 (listing factors to consider in
25   determining if there was an employment relationship).  Pilot, in turn, was not only responsible for
26   paying Plaintiff's salary, but set the requirement that Plaintiff only log 40 hours per week in the
27   timesheets Pilot provided; thus, Pilot had control over Plaintiff's wages.  (FAC ¶ 26.)  Pilot also
28   had some role in supervising his work, as Mr. Krischano was involved in Plaintiff handing off his

8

projects after he was informed that his contract had been terminated. (FAC ¶ 33.) These facts are sufficient to demonstrate a joint employer relationship at this stage of the litigation.

In the alternative, US LBM asserts that it did not maintain any employee personnel file for Plaintiff, such that it had no records available for inspection. (US LBM Mot. to Dismiss at 8.) This appears to be a factual dispute that is not in the complaint, and it is improper to address it at the pleading stage.

Accordingly, the Court DENIES Defendants' motions to dismiss the fourth claim.

### D. Fifth Claim: Failure to Provide Accurate and Itemized Wage Statements

Labor Code § 226(a) requires that an employer provide accurate and itemized wage statements. Pilot again moves for dismissal based on the lack of a joint employment relationship, which the Court denies for the reasons stated above. As to US LBM, Plaintiff has alleged that by misclassifying him as an independent contractor and failing to prepare wage statements for Plaintiff, US LBM failed to provide accurate and itemized wage statements. (Pl.'s Opp'n re US LBM Mot. to Dismiss at 8.)

US LBM contends that it is not liable for failing to issue wage statements because Pilot paid Plaintiff for his services, such that US LBM had no obligation to issue wage statements. (US LBM Mot. to Dismiss at 8; US LBM Reply at 5.) In support, US LBM relies on *Franklin v. Community Regional Medical Center*, but this case is not relevant. There, the Ninth Circuit considered whether the plaintiff's claims against the hospital -- which included failure to provide accurate wage statements -- were so intertwined with her employment contract with the staffing agency that the claims were covered by an arbitration provision in the staffing agency's contract. 998 F.3d 867, 875 (9th Cir. 2021). In finding that the plaintiff was compelled to go to arbitration, the Ninth Circuit explained that her employment with the staffing agency was central to her claims. *Id.* The Ninth Circuit did not find that the plaintiff could not bring a wage statement claim against the hospital; it only found that the claims were not viable without reference to the staffing agency's contract, such that arbitration was required. *Id.* at 876.

In contrast, at least one court has found that "California Labor Code [§] 226 do[es] not impose obligations on those who issue checks[;] they impose obligations on *employers*." *Cooper*

*v. Directv*, No. CV 14-08097-AB (Ex), 2015 U.S. Dist. LEXIS 200228, at *19 (C.D. Cal. May 21, 2015); *see also Grande v. Eisenhower Med. Ctr.*, 44 Cal. App. 5th 1147, 1160 (2020) ("[J]oint employers are not vicariously liable for each other's Labor Code violations, but liable for their own conduct."). Thus, each Defendant has "an independent obligation to ensure Plaintiff [ was] paid all wages upon separation and that Plaintiff [ was] provided accurate wage statements." *Cooper*, 2015 U.S. Dist. LEXIS 200228, at *19. US LBM's own failure to provide the required accurate and itemized wage statements is therefore the basis of its liability.

US LBM also argues that Plaintiff's wage statement claim is time-barred to the extent that he seeks penalties based on wage statements issued before July 22, 2023, one year before the case was filed. (US LBM Mot. to Dismiss at 8.) Plaintiff does not dispute that there is a one-year statute of limitations to seek penalties under § 226. (Pl.'s Opp'n re US LBM Mot. to Dismiss at 8.) Rather, Plaintiff appears to argue that his claim is valid because he was terminated within one year of his filing of the lawsuit. (*Id.*) Plaintiff, however, cites no authority that the statute of limitations for wage statement penalties is based on the termination date, rather than the date the wage statements were issued. Indeed, courts have found that the one-year limitations period applies to cut off any penalties based on wage statements not issued within one year of the filing of a lawsuit. *See Boumaiz v. Charter Commc'ns LLC*, No. 2:19-cv-06997-JLS-ADS, 2021 U.S. Dist. LEXIS 102608, at *10 (C.D. Cal. May 19, 2021) ("The one-year limitations period therefore applies and cuts off any wage statement claims on May 23, 2018 -- one year before the filing of this Complaint.") Thus, Plaintiff cannot seek wage statement penalties based on statements issued prior to July 22, 2023. This does not affect Plaintiff's ability to obtain actual damages, which is subject to a three-year statute of limitations. *See id.* at *8-9 ("California law imposes a one-year statute of limitations if the plaintiff pursues wage statement penalties, and alternatively, a three-year statute of limitations if the plaintiff pursues actual damages.")

Accordingly, the Court DENIES Defendants' motion to dismiss the fifth claim, except that Plaintiff may not seek penalties for statements issued prior to July 22, 2023.

### E. Sixth Claim: Waiting Time Penalties

Defendants seek dismissal of Plaintiff's sixth claim for waiting time penalties. As Pilot

1   again argues solely that it is not a joint employer, Pilot's motion to dismiss is denied for the same

2   reasons as above.

3       US LBM argues that the waiting time penalties claim must be dismissed because it is

4   solely predicated on the misclassification claim. (US LBM Mot. to Dismiss at 9.) At the hearing,

5   however, Plaintiff clarified that the waiting time penalties claim was also based on the failure to

6   pay overtime. Thus, a waiting time penalty claim may be brought. *See Chan v. Panera, LLC*, No.

7   2:23-cv-04194-JLS-AFM, 2023 U.S. Dist. LEXIS 174582, at *7 (C.D. Cal. Sep. 28, 2023)

8   (finding that one instance of unpaid overtime would "trigger[] waiting time penalties at the time

9   the employee was terminated"). Accordingly, the Court DENIES Defendants' motions to dismiss

10  the sixth claim.[4]

### F.    Seventh Claim: Unfair Business Practices

12      Plaintiff's UCL claim is based on the willful misclassification and failure to furnish timely

13  and accurate wage statements. (FAC ¶¶ 94, 98.)

14      Defendants argue that because the UCL claim is based on willful misclassification, the

15  claim must be dismissed. (Pilot Mot. to Dismiss at 16; US LBM Mot. to Dismiss at 10.) Both

16  Defendants ignore that the UCL claim is also based on the failure to furnish timely and accurate

17  wage statements. In any case, the California Supreme Court has found that "a private plaintiff

18  may bring a UCL action even when the conduct alleged to constitute unfair competition violates a

19  statute for the direct enforcement of which there is no private right of action." *Kasky v. Nike, Inc.*,

20  27 Cal. 4th 939, 950 (2002). Courts in sthis district have thus concluded that a UCL claim based

21  on willful misclassification survives even though there is no private cause of action to enforce §

22  226.8. *See Colopy*, 2019 U.S. Dist. LEXIS 216020, at *18-19 (dismissing § 226.8 claim but

---

[4] To the extent Plaintiff suggests that per § 218, he can obtain waiting time penalties claim based on a violation of § 226.8 for willful misclassification, however, the Court is skeptical. While § 218 permits the recovery of wages and penalties due to an employee, the Court of Appeal in *Noe* still found that § 218 did not permit the recovery of penalties due under § 226.8 because the civil penalties were not payable to the misclassified employee. 237 Cal. App. 4th at 339-41. Plaintiff's reliance on *Naranjo v. Spectrum Security Services, Inc.*, is not to the contrary; there, the California Supreme Court simply found that failure to report premium pay for missed breaks can support monetary liability under § 226 for failure to supply an accurate itemized statement." 13 Cal. 5th 93, 121 (2022). This neither pertains to § 226.8 or waiting time penalties.

finding that the plaintiff "can allege a UCL violation premised upon a violation of § 226.8, although the scope of the remedy is defined and limited by the UCL"); *Lee v. Postmates Inc.*, No. 18-cv-03421-JCS, 2018 U.S. Dist. LEXIS 212209, at *25 (N.D. Cal. Dec. 17, 2018) (same); *see also Noe*, 237 Cal. App. 4th at 326 ("while the UCL . . . might provide plaintiffs some form of remedy for a violation of § 226.8, those remedies are qualitatively different than the penalties they might recover in a direct action to enforce § 226.8").

Accordingly, the Court DENIES Defendants' motion to dismiss the UCL claim.

### G. Eighth Claim: Failure to Pay Overtime

Plaintiff brings a claim for failure to pay overtime. To the extent Pilot seeks dismissal based on the lack of joint employment, the Court rejects this argument. Both Defendants also seek dismissal on the ground that Plaintiff's overtime claim fails to satisfy *Landers v. Quality Communications, Inc.*'s requirement that a plaintiff "allege facts demonstrating there was at least one workweek in which they worked in excess of forty hours and were not paid overtime wages." (US LBM Mot. to Dismiss at 6; Pilot Mot. to Dismiss at 16-17; *Landers*, 771 F.3d 638, 646 (9th Cir. 2015).

The Court disagrees. While Defendants complain that Plaintiff fails to identify a single workweek where Plaintiff should have been paid overtime, Plaintiff has alleged that for "[e]very week that Plaintiff worked for Defendants, his work exceeded 40 hours in a week." (FAC ¶ 26.) Thus, Plaintiff has effectively alleged that he should have paid overtime for every week of his employment, *i.e.*, the period between June 26, 2023 and July 28, 2023. (FAC ¶¶ 20, 33.) This is sufficient at the pleading stage.

Additionally, US LBM argues that it is not clear if his compensation fell below the overtime rate under California law. (US LBM Mot. to Dismiss at 6.) Yet Plaintiff has plainly alleged that he "was not paid overtime wages for such work." (FAC ¶ 107.)

Finally, Pilot argues that there are no facts to support that it knew or should have known about the alleged overtime hours. (Pilot Mot. to Dismiss at 17.) Under California law, the question is "the employer's actual or constructive knowledge: an employer who knows or should have known that an employee is or was working overtime must pay overtime wages." *Scott v.*

12

1  *Cintas Corp.*, No. 3:23-cv-05764-JSC, 2024 U.S. Dist. LEXIS 117954, at *6 (N.D. Cal. July 3,
2  2024).  Further, at the pleading stage, "knowledge . . . may be alleged generally."  Fed. R. Civ. P.
3  9; *see Scott*, 2024 U.S. Dist. LEXIS 117954, at *7.  Here, Plaintiff has alleged that even though he
4  worked more than forty hours per week, Pilot/Mr. Krischano's agreement indicated he should only
5  log forty hours per week based on the timesheets he submitted.  (FAC ¶ 26.)  Plaintiff further
6  alleges that Defendants refused to pay overtime compensation, further suggesting knowledge.  At
7  the pleading stage, the Court finds this is sufficient.

8  Accordingly, the Court DENIES Defendants' motion to dismiss the eighth claim.

### H.  Ninth Claim: Failure to Reimburse Business Expenses

Finally, Defendants move to dismiss Plaintiff's claim for business expenses.  California Labor Code § 2802 require an employer to indemnify an employee "for all necessary expenditures or losses incurred by the employee in consequence of the discharge of his or her duties[.]"  To allege a § 2802 claim, a plaintiff must plead: "(i) the employee made expenditures or incurred losses; (ii) the expenditures or losses were incurred in direct consequence of the employee's discharges of his or her duties, or obedience to the directions of the employer; and (iii) the expenditures or losses were reasonable and necessary.  In addition, the employer must either know or have reason to know that the employee has incurred the expense."  *Colopy*, 2019 U.S. Dist. LEXIS 216020, at *14.  Courts have, for example, found that a § 2802 claim existed where an employee was required to make work-related calls on a personal cell phone, but was not reimbursed.  *Cochran v. Schwan's Home Service, Inc.*, 228 Cal. App. 4th 1137, 1144-45 (2014).

Defendants argue that Plaintiff has failed to provide any details as to whether the expenses were necessary and whether Defendants had reason to know he incurred certain costs.  (US LBM Mot. to Dismiss at 6; Pilot Mot. to Dismiss at 18.)  Here, Plaintiff has alleged that he worked remotely from his home in Marin County during his employment.  (FAC ¶ 4.)  Plaintiff further alleges that he incurred expenses in the form of his home phone, home internet, and home energy costs to conduct work for Defendants.  (FAC ¶ 113.)  Given that Plaintiff had to conduct work on a computer -- as he alleges he was provided a computer by US LBM to perform work -- it can be reasonably inferred that he was required to use electricity and internet for his work, and that

13

Defendants should have known he would incur such expenses given that it was a remote work position. This is sufficient at the pleading stage, particularly given that courts have found that the identification of expenses that the defendant failed to reimburse is enough to state a claim. *See Colopy*, 2019 U.S. Dist. LEXIS 216020, at \*15.

Accordingly, the Court DENIES Defendants' motion to dismiss the ninth claim.

## IV.   CONCLUSION

For the reasons stated above, the Court GRANTS IN PART Defendants' motions to dismiss. The Court DISMISSES Plaintiff's first claim (misclassification) with prejudice, DISMISSES Plaintiff's second and third claims (whistleblower retaliation and wrongful termination) against Pilot without prejudice, and DISMISSES Plaintiff's fifth claim (accurate and itemized wage statements) with prejudice to the extent it seeks penalties for statements issued prior to July 22, 2023. The Court DENIES the remainder of Defendants' motions to dismiss.

Plaintiff may file an amended complaint within **thirty days** of the date of this order.

IT IS SO ORDERED.

Dated: January 13, 2025

KANDIS A. WESTMORE
United States Magistrate Judge

14